The case today, number 171831, Assured Guaranty Corp. et al. v. Committee of Unsecured Creditors. Good morning, Your Honors. My name is Luke Vip. I am a partner with Paul Hastings. I'm here with my partner, Kay Wittner. We represent the Official Creditors Committee in this case. Chief Jess Howard, if it's possible, we would like to reserve three minutes for a rebuttal. Yes. Thank you, Your Honor. The first thing I'd like to do is to thank the Court for expediting this appeal. I've been doing this for over 30 years, and I've done a lot of appeals, and I've seen a lot of appeals being expedited, but never expedited in this fashion, which we really appreciate. And that's really important because things are moving really fast in this adversary proceeding below, but in the case generally. And also, expediting the appeal was warranted, given how critical this issue is. And the issue is the right of an Official Committee of Unsecured Creditor, which is the only statutory fiduciary for unsecured creditors to be heard and raise issues in possibly the largest and most complex bankruptcy cases in U.S. history. But your argument applies. If we accept your argument, it applies not just to the Creditors Committee, it applies to the other parties in interest who are listed in 1109B. That is correct, Your Honor. But I think that the Court below has the ability to manage that. And also, practically, we've lived through this regime, the regime that I'm advocating, in the Second Circuit and Third Circuit for years, and it's not the nightmare that people want to make it. And I can tell you that the Court below is very strict in terms of people appearing and in terms of how much time they have. And also, it costs a lot of money to appear. So in terms of people that are not real parties in interest appearing, that's really not the practice, practically. In my experience, I operate generally in the Second and Third Circuit, and we rarely see anybody else other than the Official Committee appearing. But I recognize that the Code does not limit us to the Official Committee. Before you leave this question of timing, this was an attempt to intervene under Rule 24. No pleading or other document like that that would ordinarily be required was attached. And I know the request was that it be forgiven because it doesn't make any sense in this case. But so we have a hearing coming up on a motion to dismiss. Is that what's happening at the end of the 19th? So how was the District Court judge supposed to determine whether and at what level the intervention should be granted without knowing what the position is? And I have a follow-up question to that, which is, what is it that, you know, if you've got everything that you Well, I don't want to get hung up on the 19th in the sense that there is a motion to dismiss. It's important to us because we're trying to act expeditiously, but I don't know how expeditiously we have to act. Okay. Well, obviously on the 19th, we'd like to be, if we can, but I don't want the Court to believe that if we don't get the 19th, we should deny the relief. What I'm saying is that we want to be heard on the 19th on the motion to dismiss to support the Oversight Board. And you might say, okay, so therefore why do you need to be heard? Because we do, and this is the important part of a creditors' committee, we need to agree on the relief, the ultimate relief, which is in this case dismissal of this adversary proceeding. There are many others, by the way, but for different reasons. And the committee has not articulated yet what position it will take at that hearing, but the point is that, and it may be that we will be heard for one minute, but the point is this is a seminal proceeding in the sense that there are 23 other adversary proceedings in this case. So I don't want the fact that there's a motion to dismiss to drive the issue of, I understand your point about how quickly you want to rule, but that shouldn't drive the outcome here. And in terms of what the Court was told is we would have the right solely to appear and to brief the issue. And we said that generally that we were on the oversight boards on the issue of certification of the fiscal plan, but we wanted to maintain some flexibility. You always have to understand, we were appointed and this case was already pending, so we have two weeks, or a week, to make decisions to intervene. And you might say, well, why are you intervening if you don't know if you're going to get heard? The problem is we don't know that, and the superseding has a life of its own. For example, we might be completely aligned with the oversight board on a motion to dismiss hearing, but if the Court does not grant that, all the other issues that come after that might not be aligned. So we have no way of knowing, and that's why I speak of being heard and raising issues, because we are the watchdog of the debtor, and we don't know in advance, six months in advance, what position they will take on every issue. We may be in agreement on the results, but not how to get there. Let me put a sharper point on the timing question that Judge Howard has asked. If we were to rule in your favor in this appeal, but not do so until the 20th or the 21st, for example, you know, it's after the 19th, would you be taking the position that whatever happened on the 19th has to be redone because you were kept from participating in it? No, Your Honor. I'll be very candid with you. The concern I have is there are 23 other supersedings. This is the first one that comes up. My concern... I'm just interested in the timing. And similarly, if we were to today issue a ruling in your favor, would you insist on delaying anything on the 19th? No, Your Honor. Absolutely not. That is not our intent. And it may be, I want to be clear, it may be at that hearing that we will say nothing. But the point is that we have a fundamental right to be heard. And also, we don't know what the court is going to say. So, for example, the Riverside Board may have argued that this motion should be granted. The court may have five questions in response to that. And depending on those responses, the committee may have a different position than the Riverside Board. This is why 1109 needs to give us the right to be involved in all these issues. But, again, I want to be clear. I don't want the motion, this mishearing, to either that you feel restricted by that or somehow constrained. But I do want the court to understand that this issue is going on in all the other supersedings as we speak. So there is clearly a timing issue. So, Your Honor, just very briefly, on 1109, that could not be a more forceful statement of a congressional intent that creditors' committees need to be involved in the destiny of unsecured creditors. And I think it's very important here to understand who the creditors' committee is. We are fiduciaries. It's irrelevant how much we're owed and all that we're there to represent all unsecured creditors. I'm not preaching for racism, whether it's clear that Congress wanted you to be involved in the destiny of that. The question is, can we do it by intervention as of right? Well, actually, let's take that on. We are indifferent as to, and I'm glad you're going this way. I believe there is a very narrow and simple path for the court, which does not require you to jump into the 2nd, 3rd Circuit versus 5th Circuit issue. If you feel you need to do that, then by all means do it, and you know where we stand on that. But I believe that the court could say that under 1109, an official committee has a right to be heard and to raise issues in any issue in the case without complying with Rule 24. That's one alternative. Or the other alternative is to say you have that right, and you can under 24A1 exercise that right, but we are hereby holding that until further order of this court, the only right that was requested is the right to brief issues and to be heard, and we're going to limit that intervention right to that right, even though you have On the first point, though, is that request, I'm not sure I've seen the record any indication that Judge Swain denied a request to appear other than by intervention. No, she did. And if you look at the last paragraph of her order, so I want to be clear that this was before the court fair and square, the analogy I would use is that we tried to buy a flight ticket to fly what I call Economy Plus with extra leg room on a flight to Boston. The oversight board said, no, no, you can only fly Economy, no extras. Fine, we agreed with that. But it's still the flight to Boston, it's still in the same direction. At the end, the order, it's very important to look at the order we submitted in the reply, and it says, we have a right to participate under 1109, none under 24, our rights are limited, and the court said, even the limited participation that the committee seeks, it's not like she was taken by surprise on this, she addressed it head on, even the limited participation is not allowed. Under 24 or under 1109, that's what's not clear. It seems this was teed up for her as a motion to intervene. Initially, it was teed up as such. We wanted greater rights, but we settled for less. But it's not like we asked for a declaration, and we ended up with an injunction. We wanted the right to be heard and more. And then we said, okay, fine, forget the more, we will just get the right to be heard. And there was phantoms put in front of her, and she hit it head on in saying, that limited right to participation is not available to you under any, on the basis of Thompson. And I really don't believe that Thompson speaks to that under 1109, because Thompson, as we all know, was a Chapter 7 case. So I believe that the court has the ability to fashion a relief here that does not require the court to get into what I call the 2nd and 3rd Circuit versus 5th Circuit issue. Otherwise, we're going to have an official committee of unsecured credit that will be shut out from half the case. When I say half the case, because to date, as I said, there are 23 administrative proceedings pending. At least 50% of the case is going on in these administrative proceedings. And where the court is getting us in terms of rights is, you can come, you're very depressed, you can come, you can listen. That can't be 1109. So it can be that a statutory provision is applied differently in a case, depending on whether you're in an administrative proceeding or not. And the oversight board supports our position to be heard on the 1109. And I think the court should grant that. Just briefly, Your Honors, even from this court's parochial approach, you know that there will be, I shouldn't say tons because you're going to get upset, but there will be many appeals coming to this court and possibly beyond that. We know that there's a challenge right now to the whole case filed by bondholders and by labor unions under the appointments clause, saying that the permissive board was appointed in violation of the appointments clause. And I know that on this panel there's at least, maybe more, but there's at least one expert on the insular cases and the impact of the appointments clause. Well, why am I talking about that? Because in one case, they file a motion, so therefore I can be heard. But the unions, smarter, they file an advocacy proceeding, and I can be heard in that. That makes absolutely no sense. It means that 1109 is completely being violated by that rule. And that's why, and I think this court should, and the reason why I asked, two seconds, Your Honor, the reason I asked this court, when I mentioned this court in terms of future appeals, is that you don't want to be in a world where the only people you hear from on appeal or below, what happened below, are the oversight board and secured bondholders. You want to hear from the fiduciary for unsecured creditors as well. And for that reason, Your Honor, we believe the decision below should be reversed. But I want to be clear. We're not asking for full intervention rights. We're asking for the limited rights that were negotiated with the oversight board, and nothing more than that. And we're not insisting that that be done through 24A1. But if Your Honors can only view it through that prism, then so be it. But we're not insisting it be done through that. Thank you, Your Honor. Could you pause on one thing? The point I was asking you about earlier, as I look back at Judge Swain's order, it doesn't seem to me that she has entirely foreclosed your right to appear because she simply said that the vehicle must be intervention, and then that still leaves A2 and B. And she then ruled against you on A2 because you waived it, and she ruled against you on B because you didn't identify any interest. So it seems to me notionally what she's saying is, yes, you do have a statutory right to appear and be heard, but the vehicle for doing that is A2 or B. Yeah, but that depends. Let's talk about A2 for a second, if I may. You know, A2 is completely, I want to be careful, but it really doesn't work in the context of a creditors' committee because A2 talks about we want to impair the movement's ability to protect its interest. First of all, we have no security interest. We have interest of all unsecured creditors, and also we have to show that nobody else is representing our interest. And as I said, the oversight board may be aligned with us on certain issues in terms of the relief sought, but not on the way to get there. So for us to have to comply with 24A2 to get our 1109 rights judged, with all due respect, is really not appropriate. First of all, 1109 doesn't speak of any of that. This is something that courts are glossing on to 1109 that shouldn't be there. And so therefore, it's possible in some cases that I cannot show at the outset of the case that we are not being adequately represented by the board because we agree on the relief, but later on in the case they might take positions and then they get into the issue of was the intervention timely or not. So the point is we cannot impose a straight jacket of 24 on 1109. It doesn't work in the case of a creditors' committee in a Chapter 11 or Title III case. Good morning. I'm Greg Silbert from Weill for the insurer appellees. Section 1109B provides a qualified and a conditional right to be heard in a bankruptcy case. There are conditions, sensible restrictions that are attached to the assertion of this right in multiple different contexts, including contexts outside of an adversary proceeding. So, for example, if you are a party on the Section 1109 list and you want to object to a motion, you still have to show that you have a direct interest in the subject matter of that particular motion. Similarly, if you want to object to a plan confirmation, you have to have a direct interest in the What do you mean getting these requirements from? Because certainly 1109B itself, the statutory language, contains no such conditions. That's correct, Your Honor. So is this simply a standing requirement? If it's a standing requirement, Your Honor, it is not Article III standing. It is in the nature of what you might call prudential standing, zone of interest type analysis. So assuming the party has standing with respect to, say, participation on an issue in an adversary proceeding, what other source of condition would you import into 1109B when Congress has not put any such condition there? So for purposes of an adversary proceeding, the conditions are the ones set out in Rule 24. Let me be clear, Your Honor. There are conditions imposed in virtually every context. Sometimes they are derived from case law. Sometimes they are derived from procedural rules, as I think we all agree here today. Section 1109 is a situation-specific rule. So it is going to have a different set of requirements or conditions depending on context. I think we all agree on that. The statute itself You said we have standing. So, yes, we look at standing as a gloss that we can import into a statute. But then you said Rule 24 itself has, well, 24A1, what additional requirements does it impose if we were to read, may raise, and may appear and be heard on any issue as the equivalent of a statutory grant of right to intervene? So I don't think it is the equivalent. And with respect to if we have standing, that really gets at the question that A2 tries to uncover. Because, again, we're not talking about just do you have Article 3 standing. We're talking about a prudential standing-type analysis that asks who are you, what is your interest in this particular dispute, are you the appropriate party to be speaking on it. And that question, first of all, that takes us outside of an unconditional right to appear under 24A1. If it were an unconditional right, then every single party in interest, every creditor, every person, every individual who owns one bond, who holds one share of corporate stock in a corporate bankruptcy, would have a right to appear in every single adversary proceeding. I'm having the same problem that Judge Kayara has explained, because Rule 24A1 says on timely motion, the court must permit anyone to intervene who, one, is given an unconditional right to intervene by a federal statute. So that takes you back to Section 1109A, and I see nothing there that qualifies it in the way you are promoting it. It says a party in interest, including a creditor's committee, which we have here, may raise and appear, etc., etc. Now, I don't see anything qualifying in either of those two provisions. So, Your Honor, the assertion of the 1109 right is qualified in virtually every context, not just for intervention in an adversary proceeding. For example, a creditor's committee. By what? By a statute. I think you need to argue that may raise and may appear and be heard on any issue is not the equivalent of intervene. Because if it is the equivalent of intervene, we've got an unconditional mandate from Congress, putting aside the case or proceeding issue, that they can intervene. So I think you need to convince us that may raise and may appear and be heard is not the equivalent of intervene. It is not the equivalent. And why is that? First of all, it talks about may raise and may appear in a case. If you look, if you compare that with Section 307, which deals with a trustee, and it says may raise or similar language in a case or proceeding. So it adds proceeding. There is a textual difference there. It's clear that 307 was intended to apply to a proceeding, whereas 1109, the text does not indicate that it was intended to apply to a proceeding. Second of all, this Court has said and others have said that 24A1 is a narrowly construed rule. It applies almost exclusively to government entities. When it applies to private parties, it applies very narrowly. And normally there is a very small class of private parties who are permitted to intervene. And they are entities that have clear, unmistakable interests. Well, let's take the same statute of 1109A. 1109A, you've got a governmental entity. The Security and Exchange Commission may raise and may appear and be heard on any issue in the case under the chapter. But it may not appeal from any judgment order or decree. I think the argument that you are urging on us is that even 24A would not grant the Securities and Exchange Commission a right to intervene under 24A1. That's correct, because you would ask a sensible question like, what is the SEC's interest in this particular dispute? I assume we would always ask that to address the standing issue. Well, you would ask that under 24A2, which is the rule that the Supreme Court promulgated specifically to address this circumstance. Again, we can speak of it as standing. What it really is, it's a sort of prudential standing zone of interest. Who are you? Why are you here in this particular proceeding? And what would your role be? If raising and appearing and being heard was not fairly robust, then why would Congress have felt it necessary in A to then add on that the SEC may not appeal from any judgment order or decree entered in the case? That seems to suggest that may appear and be heard might otherwise include such fairly robust activity. And then I notice B does not include that same carve-out. So as I look at 1109A and B, it actually gives a more robust form of participation to the listed parties of interest than it does to the SEC. At least with respect to the potential to appeal, I think I would read that contrast as a ceiling but not a floor. And I go back to the point that everyone here today agrees that the exercise of this right is situation-specific. So it doesn't mean, and in fact we cite cases saying, that it doesn't guarantee a right to appeal by every party in interest. It may in some context do that. But what courts need when applying this right is flexibility to both make sure that its purposes are satisfied and also that it is read in harmony with the other purposes of the bankruptcy code in which it sits. Let me ask a practical question here. Let's assume that we've got a case where someone is entitled to raise issues, appear and be heard on any issue in an adversary proceeding. That's assuming we put to one side your argument, which I'm not necessarily doing under as case as opposed to proceeding. So let's assume that someone can raise and appear. How is that participation different from the cabined-in participation that a court could achieve under 24A1, using all of its powers to restrict duplicative activity, to under Rule 16, to control discovery? I'm having trouble seeing what the difference is between raising, appearing and being heard, and a carefully controlled right to intervene as a party. So first of all, if the right to intervene comes under 24A1 and not 24A2, then the court's ability to cabin that only arises after the parties have intervened in the case. Sure, so it's the second they intervene, but then every second that occurs thereafter is subject to all of those powers that they have, which in the case of the Unsecured Creditors Committee would also include Judge Swain's ability to approve their fee request at the end. So if she thinks they're mucking up the works by engaging in stuff that's a frolic, that's a pretty strong deterrent supervisory tool. Yes, but I don't think that the – what you're sort of saying is Rule 24 and 1109 together create this bottleneck, but we think the court can manage it. What I'm saying, and I think the better reading is, no, those two provisions together don't create the bottleneck to begin with, because the appropriate provision is the one that the committee forfeited, which is Rule 24A2. It is not a high bar, but the committee waived it in this case. And if it has an interest, as it said, all it would have had to do is to show that interest and demonstrate that, in fact, its interest is relevantly different from the one that is already being represented by the Oversight Board, which is opposing the relief we've requested. Now, that is a very sensible prudential standing type test. Who are you? What are you doing here? What will you be saying? And as you pointed out, Judge Kayada, the committee refused to take a position, refused to say – refused to attach any pleading under 24C, which itself is an independent ground to affirm this – affirm the district court's decision, said, in effect, it's premature to say what our position is, but we reserve the right to change our mind. We will either cooperate with the Oversight Board, forcefully advocate against the Oversight Board on what we don't know. We're not telling you yet. We don't know ourselves, and Judge Swain sensibly said, you're not giving me enough in this motion to determine that you have a right to automatically file briefs and present oral argument on any issue that you want to appear on. You know, those would be good points if we were talking about one of the other parties in interest who might not have an obvious interest, but – and I may not know enough about bankruptcy law, so I may be off here and correct me, but it seems to me in this proceeding, any adversary proceeding or other hearing in the case that at all potentially puts in play the question of whether secured creditors hang on to their rights, take a haircut or don't, or anything like that, is of huge interest to the unsecured creditors because they're looking to create some pile of unattached funds that they can share in. So they might – might they not have a self-evident interest that other parties in interest would not? They certainly may, Your Honor. Your Honor, let's be clear. As soon as we're talking about the specific interests of the unsecured creditors committee, we are not talking about an unconditional statutory right under A-1 because as you yourself pointed out earlier, that right, if it applies at all, applies to every single party in interest, including an individual who owns, you know, one Puerto Rico bond, right? So if they have an interest like the one you're describing, then it is a ground to intervene under some other provision, most likely A-2, which is the provision that the committee for its own strategic reasons forfeited. If not A-2, then those same arguments might well be a ground to intervene under 24-B. But the committee in this motion, and let's be frank, this motion had some problems. So the ruling that you make today is not a ruling that governs every single adversary proceeding, as the committee has suggested today. It's a ruling on the sufficiency of the motion that brought us here before you now. And that motion did not – it relied for intervention as of right only under A-1, which does not apply. It forfeited A-2, and it blew it on B because it refused to take a position. It refused to say what its role would be, and it blew it on 24-C because, you know, 24-C means something. An intervener, a party who is entering a lawsuit, and this is a full-blown federal lawsuit raising important constitutional issues. If somebody is going to step in and say, we have a right to file briefs, we have a right to present oral arguments, at a minimum has to say, has to give fair notice to us, the plaintiffs. What is your position going to be? What are you staking out as your role in this particular proceeding? And it's true that this Court said in Peaje, well, let's not be hyper-technical in our application of Rule 24-C. We are not being hyper-technical. The Committee was, it was formed five weeks before it filed this intervention motion. Our complaint was already on file. It had plenty of time to submit a response of pleading. It didn't do it, nor did it say in its motion what position it was taking. It said, we sort of reserve the right to agree with the Oversight Board or not, depending on what we think. Now, the Committee said, well, but if, you know, we may not know because something may come up later that implicates the interests of unsecured creditors. Okay, that's true. But if something comes up later that implicates interests that are different from the Oversight Board, the Committee can file a motion at that time. I don't think Judge Swain or any serious judge is going to say, you are moving to intervene based on this newly raised issue, but your motion is untimely because you didn't raise it before the issue came up. I don't think that's plausible. If the, you know, the Committee has moved to intervene in, by this point, ten adversary proceedings. So it's going to be a serial intervener. It's going to come into everyone, and if you agree with its position here, it's not going to attach any pleading, not going to say what its position is. It's going to show up and be sort of a wild card and a free agent in every adversary proceeding. And we, as plaintiffs, have rights to due process, fairness. You know, who are the parties in the case? What are they doing here? What is their position? We have a right to know that. And Rule 24 sensibly imposes those requirements on any intervener, including the Committee. The Committee did not meet those requirements here, and that's why this motion was properly denied. Thank you. Thank you. Good morning. May it please the Court. My name is Timothy Mungovin from Proskauer Rose. I'm appearing on behalf of the Commonwealth of Puerto Rico and the Financial Oversight and Management Board for Puerto Rico. The Court should affirm the denial of the motion to the extent that the Committee seeks to intervene under Rule 24. The Court should vacate and clarify the order to acknowledge that the Committee has the right to raise, appear, and be heard on issues under Section 1109B. I'd like to make three basic points. First, the context of the Committee's desired involvement in this adversary proceeding. And I would point specifically to footnote 7 of the underlying motion. And I'll read it. It says, The Committee opposes the relief sought by the plaintiffs and seeks to intervene to protect the interests of its constituents under Section 1109B. But it does not at this time assert standing with respect to or ownership over claims and defenses currently belonging to the Commonwealth or other entities. That context is critically important. Here's why. They're not asserting that they have any claim against the Commonwealth. Instead, what they're essentially saying is we're protecting, trying to protect, the interests of unsecured creditors, even though we are not at this point in time asserting ownership over a claim or defense of the Commonwealth. And to Judge Kayada, your point, what's the difference between raise, appear, and be heard and intervention? There is a difference. And the difference is that the Committee may assert down the road ownership over a claim or defense of the Oversight Board. Under Section 315 of PROMESA, the Oversight Board is the representative of the Commonwealth. It is the representative of the debtor. The issue that the Oversight Board and the Commonwealth are concerned with with respect to the intervention by the Committee, whether under 24 or purportedly under 1109B, is that the Committee will take ownership over, object to settlements of a potential claim in this adversary proceeding with the plaintiff appellee. Under Smart Tile in the Second Circuit, would they be able to do that? Under Smart World, they would not be able to do that, Your Honor. And specifically in Smart World, what we raised in our brief to this Court is that to the extent that the Court will look at Second Circuit case law, the adjudication of the rights and the delimitation of the rights of the Committee under 1109B should only include raising issues appearing and being heard, but not to object to or resolve a case or a claim or to settle the claim. So if you take the Second Circuit rule as implemented in Smart World and you add on top of that what we would all understand to be the fairly wide discretion that a trial judge has under the civil rules that are gappable here, what then is the difference between intervention as supervised by the Court and raising appearing and being heard in practical terms? In practical terms, Your Honor, there is very little difference between what the Second Circuit and perhaps no difference between what the Second Circuit did in Smart World and what effectively we would be advocating for. What we would suggest is you don't have to go to Rule 24 and then limit it as the Second Circuit did in Smart World. If you just reside within, so to speak, 1109B and say, raise, appear, and be heard means exactly what it says, and it doesn't go beyond that, and it doesn't suggest ownership or the ability to usurp the authority of the oversight board as the representative of the debtor here. And that's really the issue, and the Second Circuit in Smart World was really carving back, if you will, the decision in Caldor which was effectively saying 1109B allows you to intervene under 24, but then they had to bring that back and say, but it doesn't allow that party in interest to usurp the authority of the debtor or the representative of the debtor. With that, Your Honor, I'm nearly out of time, but I'm happy to take any questions that the Court may have, but subject to the request that we've made, I'll leave it at that. Okay, thank you. Thank you very much. Very briefly, Your Honors, I just want to address one point, which is the point that was made. Well, maybe 1109 does not apply in adversary proceedings because 307 mentions case and proceedings, and I want to be very clear, and we've briefed this extensively, but if you do a search, now we can do this electronically, for the word adversary proceeding in the Bankruptcy Code, you'll never find it anywhere. You will find the word proceeding in various sections, which doesn't mean adversary proceeding. I'll give you an example. Section 555 protects swap participants and all that, and it says a court may not enter an order in any proceeding stopping that. If we were going to buy that argument that proceeding means adversary proceeding in that case, then a court could enter an order stopping a swap counterparty in the case itself. It makes no sense. So I want to be clear that every time the Code uses the word proceeding, it does not necessarily mean adversary proceeding. And the issue, the last point I want to make is we have a right, this is a short point, we have a right to know what they're going to say and all that, and obviously the court is setting a briefing schedule, so we will not be just showing up in court and say, well, these are our thoughts for the day. We have to comply with the briefing schedule, and if we don't brief it, then they're home free. And by the way, I want to be clear, in some cases we will not brief because we'll be in perfect agreement with the board, as we are on this issue. But clearly the parties will be on notice of what our positions are and because we have to comply with the district court's briefing and other restrictions.  Anything else? All right. All rise.